*Michael Pacheco v. State of Maryland*, No. 17, September Term, 2018

**CRIMINAL PROCEDURE — ODOR OF MARIJUANA — PROBABLE CAUSE — SEARCH INCIDENT TO LAWFUL ARREST EXCEPTION — DECRIMINALIZATION OF LESS THAN TEN GRAMS OF MARIJUANA**

In the post-decriminalization era, the mere odor of marijuana coupled with possession of what is clearly less than ten grams of marijuana, absent other circumstances, does not grant officers probable cause to effectuate an arrest and conduct a search incident thereto. It is well established that individuals have a heighted expectation of privacy in their person as compared to their automobile, meaning the probable cause analysis for the search incident to arrest exception versus the automobile exception will often differ given the respective justifications for those exceptions and the facts and circumstances of each case. Thus, although Petitioner's possession of a marijuana cigarette along with the odor of marijuana may have given the officers probable cause to search his vehicle, it did not grant them probable cause to arrest him and conduct a search incident thereto.

Circuit Court for Montgomery County
Case No. 130184
Argued: October 9, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 17

September Term, 2018

---

MICHAEL PACHECO

v.

STATE OF MARYLAND

---

Barbera, C.J.,
*Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.

---

Opinion by Barbera, C.J.
McDonald and Watts, JJ., concur.

---

Filed: August 12, 2019

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

*Greene and Adkins, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

"The times they are a-changin'."

—Bob Dylan, *The Times They Are a-Changin'*

It is by now well known that the laws in Maryland and elsewhere addressing the possession and use of marijuana have changed. Those changes naturally have compelled examination of how the affected laws are to be interpreted and applied consistent with the dictates of other law including, here, the Fourth Amendment's protection against unreasonable searches and seizures.

Presented in this case is a question of first impression. That question, as framed in the brief of Petitioner Michael Pacheco, is

> whether police are authorized to arrest a person for the criminal offenses of possession of more than ten grams of marijuana and/or possession of marijuana with intent to distribute, based solely on facts indicating that the person is committing the civil offense of possession of less than ten grams of marijuana.

For reasons that follow, we answer that question in the negative.

I.

Facts and Procedural History

On May 26, 2016, Officers Groger and Heffley, of the Montgomery County Police Department, were conducting a "routine foot patrol" in Wheaton, Maryland. Around 10:00 p.m., they noticed what they would later describe as a "suspicious vehicle" parked behind a laundromat "in a dark parking spot . . . with the windows down. . . . and nowhere near

the business itself."[1]  The officers found it suspicious that someone would sit in his or her car rather than in the laundromat, which was open at the time.  In Officer Heffley's experience, "people take their laundry in and they stay in the [l]aundromat," because the laundromats in the area have "free Wi-Fi . . . and TVs."  As they approached the vehicle (a Chevrolet Trailblazer), Officer Groger went to the driver's side while Officer Heffley headed to the passenger's side.  Officer Heffley would later testify, after having his recollection refreshed, that he was "within a foot" of the vehicle when he smelled the odor of "fresh burnt" marijuana.  Officer Groger also testified that he had detected the odor of burnt marijuana.  He said the odor was "strong" but did not specify how far away he was when he detected it.  Both officers could see that Mr. Pacheco was alone and seated in the driver's seat.  Officer Heffley observed a marijuana cigarette in the vehicle's center console, which he testified he knew immediately was less than ten grams.  The officer asked Mr. Pacheco to give him the "joint."  Mr. Pacheco complied.

Immediately thereafter, the officers ordered Mr. Pacheco to exit the vehicle and searched him.  During the search, the officers discovered cocaine in Mr. Pacheco's "left front pocket."  The officers then searched the vehicle, whereupon they recovered a marijuana stem and two packets of rolling papers.  The officers transported Mr. Pacheco to the police station, where they issued him a citation for possessing less than ten grams of marijuana and charged him with possession of cocaine with intent to distribute it.

---

[1] Although the officers described the vehicle's position as suspicious and the hearing judge credited that testimony, the officers' body camera footage reveals that Mr. Pacheco's vehicle was parked in close proximity to other vehicles.

Mr. Pacheco moved to suppress the cocaine, arguing that the officers' warrantless search of his person was illegal because, at the time of the search, the officers lacked probable cause to believe that he possessed ten grams or more of marijuana. The State countered that the odor "provided probable cause to search 'both the vehicle and [Mr. Pacheco].'"

At the suppression hearing, the officers differed about the basis for the arrest. Officer Heffley testified that Mr. Pacheco was arrested for possessing cocaine, stating that before the cocaine was found, no basis for an arrest existed because Mr. Pacheco only possessed a small quantity of marijuana. Officer Groger stated that he "searched Mr. Pacheco incident[] to [an] arrest [for] the fresh burnt odor of marijuana," although he acknowledged that possession of less than ten grams would be a civil offense "[i]f that was all that was recovered in the joint."

The circuit court denied the motion to suppress the cocaine. In the court's opinion, the possession of what appeared to the officers to be less than ten grams of marijuana gave them probable cause to arrest Mr. Pacheco and thereby to conduct a search of his person incident to the arrest. Mr. Pacheco then entered a conditional guilty plea, which preserved his right to withdraw the plea if he was successful in his appeal of the court's ruling on the motion to suppress.

On appeal, the Court of Special Appeals, in an unreported decision, upheld the search of Mr. Pacheco as incident to a lawful arrest. The Court of Special Appeals determined that Mr. Pacheco "was the driver and sole occupant of a vehicle that smelled of

3

freshly burnt marijuana, and police observed a marijuana joint in the center console." Relying predominately on pre-decriminalization cases, the Court of Special Appeals concluded that "these circumstances gave the police probable cause to arrest [Mr. Pacheco]."

## II.

### Standard of Review

Our review of a circuit court's denial of a motion to suppress evidence is "limited to the record developed at the suppression hearing." *Moats v. State*, 455 Md. 682, 694 (2017). We assess the record "in the light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress." *Norman v. State*, 452 Md. 373, 386, *cert. denied*, 138 S. Ct. 174 (2017). We accept the trial court's factual findings unless they are clearly erroneous, but we review *de novo* the "court's application of the law to its findings of fact." *Id.* When a party raises a constitutional challenge to a search or seizure, this Court renders an "'independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case.'" *Grant v. State*, 449 Md. 1, 15 (2016) (quoting *State v. Wallace*, 372 Md. 137, 144 (2002)).

## III.

### Discussion

In 2014, the General Assembly decriminalized possession of less than ten grams of marijuana. *Robinson v. State*, 451 Md. 94 (2017). The legislature made such possession a "civil offense" and mandated that a "police officer shall issue a citation to a person who the police officer has probable cause to believe has committed [that civil offense]." *Id.* at 97, 115 (citations omitted). Since then, courts in Maryland and others across the country

4

have grappled with the constitutionality of searches and seizures that are based, at least in part, on the odor of marijuana. *See Norman v. State*, 452 Md. 373, *cert. denied*, 138 S. Ct. 174 (2017); *Robinson v. State*, 451 Md. 94 (2017).[2] The present case adds to that collection and provides us with another opportunity to clarify this evolving area of Fourth Amendment jurisprudence.

*The Fourth Amendment, the Reasonableness Clause, and Exceptions to the Warrant Requirement*

It is well settled that the Fourth Amendment to the United States Constitution prohibits "unreasonable" searches and seizures. *State v. Johnson*, 458 Md. 519, 533 (2018); *see also Maryland v. King*, 569 U.S. 435, 447 (2013) (citation omitted) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"). Although warrantless searches and seizures are "presumptively unreasonable," *Henderson v. State*, 416 Md. 125, 148 (2010), they may be deemed reasonable if the circumstances fall within "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Whether a particular warrantless action on the part of the police is "reasonable" under the Fourth Amendment "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "In some circumstances, such as '[w]hen

---

[2] *See also State v. Perry*, 874 N.W.2d 36 (Neb. 2016); *People v. Zuniga*, 372 P.3d 1052 (Colo. 2016); *Commonwealth v. Overmyer*, 11 N.E.3d 1054 (Mass. 2014); *State v. Ortega*, 770 N.W.2d 145 (Minn. 2009); *In re O.S.*, 112 N.E.3d 621 (Ill. App. Ct.), *appeal denied*, 110 N.E.3d 189 (Ill. 2018); *State v. Brito*, 154 A.3d 535 (Conn. App. Ct.), *cert. denied*, 155 A.3d 755 (Conn. 2017).

faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the [Supreme] Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.'" *King*, 569 U.S. at 447 (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). It is the State's burden to prove the legality of a warrantless search. *Holt v. State*, 435 Md. 443, 459 (2013).

This case gives rise to consideration of two exceptions to the warrant requirement of the Fourth Amendment: the so-called "automobile exception" announced in *Carroll v. United States*, 267 U.S. 132 (1925), and the search incident to arrest exception announced in *Chimel v. California*, 395 U.S. 752 (1969).

*The Automobile Exception*

*Carroll* and its progeny authorize the warrantless search of a vehicle if, at the time of the search, the police have developed "probable cause to believe the vehicle contains contraband or evidence of a crime." *Johnson*, 458 Md. at 533 (citing *United States v. Ross*, 456 U.S. 798, 799 (1982)); *see also California v. Carney*, 471 U.S. 386, 391 (1985) (stating that "[b]esides the element of mobility, less rigorous warrant requirements govern [automobile searches] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office"). The automobile doctrine permits the search of "every part of the vehicle and its contents that may conceal the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (quoting *Ross*, 456 U.S. at 825). The search, however, "extends no further than the automobile itself." *Collins v. Virginia*, __ U.S. __, 138 S. Ct. 1663, 1671 (2018). "Expanding the scope of the automobile exception [beyond the vehicle] would both undervalue the core Fourth Amendment

6

protection afforded to the home and its curtilage and 'untether' the automobile exception 'from the justifications underlying' it." *Id.* (quoting *Riley v. California*, 573 U.S. 373, 386 (2014)).

*The Search Incident to Arrest Exception*

The exception that authorizes a search incident to the (lawful) arrest of a person "has an ancient pedigree" and was recognized "[w]ell before the Nation's founding." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174 (2016). For the search to be reasonable under the Fourth Amendment, the police must be armed with probable cause to believe that the person subject to arrest has committed a felony or is committing a felony or misdemeanor in the presence of the police. *Maryland v. Pringle*, 540 U.S. 366, 369-70 (2003); *see also United States v. Robinson*, 414 U.S. 218, 225 (1973) ("The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted.") (quoting *Agnello v. United States*, 269 U.S. 20, 30 (1925)). The Supreme Court has not wavered from the original justification for a search incident to arrest:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a

7

weapon or destructible evidence.

*Riley*, 573 U.S. at 383 (alteration in original) (quoting *Chimel*, 395 U.S. at 762-63); *accord Birchfield*, 136 S. Ct. at 2174-76.

By its express terms, the condition precedent to a search incident to arrest is that the police have made a lawful custodial arrest of the person, that is, an arrest supported by probable cause that the arrestee has committed or is committing a crime. *Pringle*, 540 U.S. at 369-70; *see also Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) (stating that a search incident to an arrest may precede the formal arrest so long as the police already have amassed the requisite probable cause to make the arrest and the search is conducted "incident" to the arrest). Because the search is premised on probable cause to make the arrest, the first question to be considered whenever such a search has been conducted is whether the police had the requisite probable cause *before* conducting the search. *Donaldson v. State*, 416 Md. 467, 481 (2010).

*The Probable Cause Standard in Application*

The vehicle and search incident to lawful arrest exceptions are similar in that both turn on whether law enforcement had probable cause to conduct the warrantless search at issue. *See Carroll*, 267 U.S. at 149 ("On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."); *Riley*, 573 U.S. at 384 ("a 'custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being

8

lawful, a search incident to the arrest requires no additional justification.'").

The probable cause standard has been described generally as a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Pringle*, 540 U.S. at 370 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "Probable cause, moreover, is 'a fluid concept,' 'incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.'" *McCracken v. State*, 429 Md. 507, 519-20 (2012) (quoting *Pringle*, 540 U.S. at 370-71). For that reason, "[p]robable cause does not depend on a preponderance of the evidence, but instead depends on a 'fair probability' on which a reasonably prudent person would act." *Robinson*, 451 Md. at 109 (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). In describing probable cause, the Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* at 110 (quoting *Harris*, 568 U.S. at 244).

The authorization for and permitted scope of the search at issue is tied directly to the justification(s) for it. In that sense, the probable cause determinations for the automobile exception and the search incident to lawful arrest exception are not "in all respects identical." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), at 7 (5th ed. 2012) [hereinafter "LaFave"]. Although the probable cause determination for each of these exceptions requires the same "quantum of evidence," "[e]ach requires a showing of probabilities as to somewhat different facts and circumstances—a point seldom made explicit in the appellate cases." *Id*. "This distinction is a critical one, . . . .

9

[and] there may be probable cause to search without probable cause to arrest, and vice-versa." *Id.* at 12; *see, e.g.*, *Butler v. United States*, 102 A.3d 736, 741 (D.C. 2014) (noting that, prior to the legalization of marijuana in Washington D.C., "the smell of marijuana 'generally' emanating from appellant's vehicle . . . indisputably would allow the police to search the *vehicle*," but the court had "reservations" about whether the driver's *arrest* could have been upheld without the additional facts that the defendant "was the sole occupant of the vehicle" and "the aroma was of *fresh* marijuana.").

When determining whether probable cause exists for purposes of the automobile exception, courts ask whether "there is probable cause to believe the vehicle contains contraband or evidence of a crime." *Johnson*, 458 Md. at 533 (citing *Ross*, 456 U.S. at 799). However, before a person can be lawfully arrested and searched incident thereto the focus must be on the likelihood of the "guilt of the arrestee," LaFave at 9, and asks whether "there is probable cause to believe that the individual has committed either a felony or a misdemeanor in an officer's presence." *Donaldson*, 416 Md. at 480; *see also United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) ("In the search context, the question is whether the totality of circumstances is sufficient to warrant a reasonable person to believe that contraband or evidence of a crime will be found in a particular place. Whereas in the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime.") (citations omitted).

The distinction between the two exceptions is at least in part due to the diminished expectation of privacy that justifies the automobile exception, *Carney*, 471 U.S. at 390-92,

10

as compared to the "unique, significantly heightened" constitutional protections afforded a person to be secure in his or her body, *Houghton*, 526 U.S. at 303. Stated differently,

> [p]robable cause to believe that a person is carrying evidence does not justify a warrantless search of the person any more than probable cause to believe a home contains evidence justifies a warrantless search of a home. Only places or things enjoying a lesser expectation of privacy, such as automobiles, are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of crime.

*State v. Funkhouser*, 140 Md. App. 696, 724 (2001). The Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 25 (1968), emphasized the significant level of intrusion upon a person that is a "search incident to an arrest," in comparing that intrusion to the lesser intrusion upon the person that is a "pat down." The *Terry* Court had this to say on the subject:

> An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prose-cution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.

*Id.* at 26.

*Probable Cause in the Post-Decriminalization Era*

1. *The General Assembly's decriminalization of less than ten grams of marijuana*

In 2014, citing concerns over the disproportionate number of African-Americans arrested for marijuana possession compared to whites, despite comparable usage rates, the General Assembly decriminalized the possession of less than ten grams of marijuana.[3]

---

[3] *See Criminal Law—Possession of Marijuana—Civil Offense: Hearing on S.B. 364 Before the H. Judiciary Comm.*, 2014 Reg. Sess. (Md. 2014), available at http://mgahouse.mary-land.gov/mga/play/1f0ace2b889b4079bcfb85b6ba52d452/?catalog/03e481c7-8a42-4438-a7da-93ff74bdaa4c&playfrom=2926752 [https://perma.cc/V5ZW-NLPQ].

11

With the enactment of Maryland Code Ann., Crim. Law Article ("CL") (2002, 2012 Repl. Vol., 2014 Supp.) §§ 5-601 and 5-601.1, the possession of less than ten grams of marijuana became a civil offense. Although marijuana possession was not legalized outright, possession of less than ten grams would be from then on considered a "civil offense" and not a criminal one. *Id.*; *see also supra* note 3. The decriminalization was an effort to reduce the considerable time and resources spent on arresting, prosecuting, and adjudicating marijuana cases, which many legislators believed should not be considered criminal or, at the very least, should not be considered a high priority for the criminal justice system. *See supra* note 3.

The parties spar over the legislative history of CL §§ 5-601 and 5-601.1 but ultimately to no end insofar as it concerns the present case. The question before us is a constitutional one; consequently, the answer hinges not on what was said at a House Judiciary Committee Hearing, but rather on application of settled Fourth Amendment law to the facts and circumstances presented here. Relevant to that analysis are two recent decisions of this Court, *Robinson v. State*, 451 Md. 94 (2017), and *Norman v. State*, 452 Md. 373, *cert. denied*, 138 S. Ct. 174 (2017), both of which apply Fourth Amendment jurisprudence to situations implicating the decriminalization of possession of less than ten grams of marijuana.[4]

---

[4] Mr. Pacheco notes that both CL §§ 5-601 and 5-601.1 have been amended since he was arrested. Those amendments, however, did not change the amount of marijuana that constitutes criminal possession, nor did they change the other relevant provisions. *See* 2016 Maryland Laws Ch. 514, 6232-38 (H.B. 565) and 2016 Maryland Laws Ch. 515, 6373-75 (S.B. 1005).

2.  Robinson *and* Norman

*Robinson* was a consolidated appeal in which three defendants in three unrelated cases argued that the odor of marijuana emanating from their respective vehicles did not provide law enforcement with probable cause to search the vehicles.  *See* 451 Md. at 98. After a thorough analysis of the relevant constitutional principles, discussed above, and application of those principles to the circumstances presented in *Robinson* in light of CL §§ 5-601 and 5-601.1, we concluded that

> a law enforcement officer has probable cause to search a vehicle where the law enforcement officer detects an odor of marijuana emanating from the vehicle, as marijuana in any amount remains contraband, notwithstanding the decriminalization of possession of less than ten grams of marijuana; and the odor of marijuana gives rise to probable cause to believe that the vehicle contains contraband or evidence of a crime.

*Id.* at 99.

The *Robinson* Court made clear that contraband and evidence of a crime are not always synonymous.  *Id.* at 128-30.  "Contraband" refers to "goods that are **illegal** to possess, regardless of whether possession of the goods is a crime," *id.* at 128 (emphasis in original); "evidence of a crime" is just that, regardless of the inherent "legality" of such evidence.

We stated in *Robinson* that for purposes of probable cause in the context of vehicle searches, "there is no distinction between the significance of a criminal amount of marijuana versus the significance of a noncriminal—but still illegal—amount of marijuana." *Id.* at 130.  The Court identified three crimes in which the presence of the odor of marijuana and/or a marijuana cigarette could provide the requisite probable cause to believe that the

13

vehicle contained contraband or evidence of a crime: "possession of ten grams or more of marijuana, crimes involving the distribution of marijuana, and driving under the influence of a controlled dangerous substance," none of which have been decriminalized. *Id.* at 134. Thus, the mere odor of marijuana emanating from a vehicle provides probable cause that the vehicle contains additional contraband or evidence of a crime, thereby permitting the search of the vehicle and its contents. *Id.* at 130, 134.

Shortly after *Robinson*, this Court in *Norman* faced, in a somewhat similar factual scenario, a different legal question: "whether a law enforcement officer who detects an odor of marijuana emanating from a vehicle with multiple occupants has reasonable artic-ulable suspicion that the vehicle's occupants are armed and dangerous, and thus may frisk—*i.e.*, pat down—the vehicle's occupants for weapons." 452 Md. at 378. In that case, the State argued that the rationale of *Robinson* extended beyond searches of vehicles and applied to *Terry* frisks as well. We disagreed.

We explained in *Norman* that a "frisk" of a person is "different from a search of a person," both in purpose and in scope. *Id.* at 388. The purpose of a frisk[5] is to uncover weapons to ensure officer safety, and thus its scope is limited to a pat down of the vehicle's occupant(s) for weapons. *Id.* The frisk is not based on "probable cause," but instead, "reasonable suspicion" that a person is armed and dangerous. In that regard a frisk is a

---

[5] In a line of cases beginning with *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court has held that the Fourth Amendment permits a "pat-down" of an individual whom the po-lice have lawfully stopped based on a reasonable suspicion of criminal activity, if, but only if, the police have the requisite reasonable suspicion that the person stopped is armed or dangerous. *Id.* at 30; *see also Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009); *Sellman v. State*, 449 Md. 526, 541-42 (2016).

14

lesser intrusion upon the person than is a full search. The latter, a greater intrusion, requires a higher level of suspicion, *i.e.*, probable cause to believe that the person is armed or in possession of evidence of a crime. We held in *Norman* that the mere odor of marijuana was not sufficient to establish reasonable suspicion that "the vehicle's occupants are armed and dangerous, and thus subject to frisk." *Id.* at 411.

In *Norman*, this Court also clarified the limits of *Robinson*, stating that

the only issue in *Robinson* was whether an odor of marijuana emanating from a vehicle provides probable cause to search the vehicle. No frisks or searches of persons were at issue in *Robinson*, and nowhere in *Robinson* did this Court imply, one way or the other, whether a frisk of a person would be permissible based on an odor of marijuana alone emanating from a vehicle.

*Id.*

Pertinent to the case before us, we did not mention in either *Robinson* or in *Norman*, nor need we have done so under the facts presented in those cases, whether the lawful detection of the odor of burnt marijuana emanating from a vehicle gives rise to probable cause to arrest the occupant(s) and pursuant to such probable cause conduct a full search of the occupant(s) incident to the arrest.

*The Present Case*

Mr. Pacheco does not contest that the police officers had probable cause to search his vehicle based on the odor of marijuana and presence of a joint in the vehicle's center console. As we made clear in *Robinson*, marijuana in any amount remains contraband and its presence in a vehicle justifies the search of the vehicle. 451 Md. at 124-33. Therefore, the eventual search of Mr. Pacheco's vehicle was permissible by application of the auto-mobile doctrine.

15

It does not follow, however, that because the police lawfully searched Mr. Pacheco's car for contraband or evidence of the three crimes identified in *Robinson*, they likewise had the right to search his person. It is not in dispute that the only rationale offered by the State in support of the search of Mr. Pacheco was that it was a proper search "incident to his arrest." For such a search to have been reasonable under the Fourth Amendment, the officers must have possessed, *before* the search, probable cause to believe that Mr. Pacheco was committing a felony or a misdemeanor in their presence.

The Supreme Court has long held that a search incident to a lawful arrest is permissible only if the underlying arrest is lawful. *See Pringle*, 540 U.S. at 371 ("To determine whether an officer had probable cause to arrest an individual, we examine the events *leading up* to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.") (emphasis added) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("As we have had occasion in the past to observe, '[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.'") (quoting *Sibron v. New York*, 392 U.S. 40, 63 (1968)); *Bailey v. State*, 412 Md. 349, 375 (2010) ("In the case of a search incident to arrest, the State must show that probable cause supported a lawful arrest before the officer conducted the search."); *see also Rawlings*, 448 U.S. at 111 (stating that the search can occur either before or after the arrest so long as probable cause exists for the arrest at the time of the search).

The State wisely does not argue that the product of the search of Mr. Pacheco—the cocaine—supplied probable cause for that search. And, for his part, Mr. Pacheco concedes

16

that if the officers had searched the car before searching him *and* they had found evidence of his commission of a crime, then they would have had the requisite probable cause to search him.[6] What we must decide, then, is whether the circumstances leading up to the officers' search of Mr. Pacheco supplied probable cause that he had committed either a felony or a misdemeanor in the officers' presence. The officers testified that they observed Mr. Pacheco in the driver's seat of what they further described as a "suspicious," though legally parked, vehicle. They also testified to their detection of "fresh burnt" marijuana emanating from the vehicle and the joint they observed in the center console. These facts, without more, do not meet the standard for probable cause to arrest and thereby to search Mr. Pacheco.

As we earlier mentioned, this Court, in *Robinson*, identified three crimes that the odor of marijuana may indicate are occurring: possession of ten grams or more of mariju-ana, possession of marijuana with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance. 451 Md. at 133. The State argues that the first of these crimes—possession of ten grams or more of marijuana—is relevant here.[7]

---

[6] We note that the search of the vehicle following the search of Mr. Pacheco led to the recovery of two packets of rolling papers and a marijuana stem, which Officer Heffley testified had no "evidentiary value." He was correct because under CL § 5-619(c), the "use or possession of drug paraphernalia involving the use or possession of marijuana" is not criminal.

[7] Nothing in the record suggests, nor does the State argue, that Mr. Pacheco intended to distribute marijuana or was operating the vehicle while under the influence of marijuana. The only indication that Mr. Pacheco operated the vehicle at an earlier time was that he was alone and in the driver's seat when the police encountered him; moreover, the record

17

In the probable cause determination, "the experience and special knowledge of police officers who are [attempting to establish probable cause] are among the facts which may be considered." *Longshore v. State*, 399 Md. 486, 534 (2007) (alteration in original) (quoting *Wood v. State*, 185 Md. 280, 286 (1945)). "The observations of the police, however, must be based on something factual." *Id.* Our research has not disclosed a case decided by this Court, nor does the State supply us with a case, holding that the police have probable cause to search a person incident to arrest based on facts precisely like those we have here. The officers here did not testify that in their experience and training the possession of one joint—which the officers recognized clearly contained less than ten grams of marijuana[8]—supported an inference that Mr. Pacheco also possessed roughly nine and a half more grams of that substance on his person. Nor did the officers' testimony at the hearing on the suppression motion offer the court any facts that might have supported an inference that, at the moment they searched Mr. Pacheco, the officers had probable cause to arrest him.

In sum, the record before us simply does not support the conclusion that the officers had probable cause to arrest Mr. Pacheco based on the belief that he was committing, had committed, or was about to commit a crime in their presence. The facts presented by the

___

does not make clear that the police even considered him to have been under the influence of that drug.

[8] A recent analysis of federal arrest data shows that a joint typically contains .32 grams of marijuana. *See* Niraj Chokshi, *How Much Weed is in a Joint? Pot Experts have a New Estimate*, N.Y. Times (July 14, 2016), https://www.nytimes.com/2016/07/15/science/how-much-weed-is-in-a-joint-pot-experts-have-a-new-estimate.html [https://perma.cc/HPQ2-6PW6].

State and credited by the hearing judge were sufficient to establish probable cause to search the vehicle based on the presence of contraband. However, little else was presented that addressed why this minimal amount of marijuana, which is not a misdemeanor, but rather a civil offense, gave rise to a fair probability that Mr. Pacheco possessed a criminal amount of marijuana on his person. In a different case, additional facts or testimony beyond what we have here may well have compelled a different result. But because the State bears the burden of proving that a warrantless search is nevertheless legal, we cannot say that burden was met in the present case.

## IV.

### Conclusion

The same facts and circumstances that justify a search of an automobile do not necessarily justify an arrest and search incident thereto. This is based on the heightened expectation of privacy one enjoys in his or her person as compared to the diminished expectation of privacy one has in an automobile. The arrest and search of Mr. Pacheco was unreasonable because nothing in the record suggests that possession of a joint and the odor of burnt marijuana gave the police probable cause to believe he was in possession of a criminal amount of that substance.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AND REMAND TO THAT COURT WITH INSTRUC-TIONS TO GRANT THE MOTION**

19

**TO SUPPRESS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

Circuit Court for Montgomery County
Case No. 130184
Argued: October 9, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 17

September Term, 2018

_____

MICHAEL PACHECO

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
*Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring Opinion by McDonald, J.,
which Watts, J., joins.

_____

Filed: August 12, 2019

*Greene and Adkins, JJ., now retired, partici-
pated in the hearing and conference of this case
while active members of this Court; after being
recalled pursuant to the MD. Constitution, Arti-
cle IV, Section 3A, they also participated in the
decision and adoption of this opinion.

The Majority Opinion is reasonable and thoughtful. However, it is worth noting its limited nature.

The essential and undisputed circumstances of the police encounter with Mr. Pacheco are as follows. Mr. Pacheco was sitting alone in the driver's seat of a vehicle in a suburban parking lot. Two police officers patrolling the area approached the vehicle, detected the odor of "fresh burnt marijuana" emanating from within, and observed a marijuana joint on the center console near Mr. Pacheco. They asked Mr. Pacheco to get out of the vehicle. After he did so, they arrested him and found cocaine in his pocket.

As the Majority opinion notes, under current State law, the odor of marijuana may simply be evidence of a civil infraction involving less than 10 grams of marijuana and possession of contraband – or it may be evidence of a crime. In particular, it may be evidence of: possession of 10 grams or more of marijuana, possession of the drug with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance.[1] *See Robinson v. State,* 451 Md. 94, 133-34 (2017).[2]

---

[1] *See* Maryland Code, Transportation Article, §21-902(c) (defining offenses that may be committed by a person who "drive[s] or attempt[s] to drive any vehicle while so far impaired by any drug … that the person cannot drive a vehicle safely"), §21-902(d) (defining offenses that may be committed by a person who "drive[s] or attempt[s] to drive any vehicle while the person is impaired by any controlled dangerous substance … if the person is not entitled to use the controlled dangerous substance under the laws of this State").

[2] In *Robinson*, the Court unanimously held that law enforcement officers had probable cause to search a vehicle based on a smell of marijuana emanating from the vehicle.

The latter offense is a matter of growing concern. It has been reported that, between 2017 and 2018, the number of vehicle crashes in Maryland linked to marijuana-impaired driving rose by nearly 40 percent.[3] A conscientious law enforcement officer who comes upon a vehicle occupied by one individual who is seated in the driver's seat with a marijuana joint close at hand and the odor of freshly burnt marijuana in the air will be duty-bound to investigate whether the individual is committing that offense. In many situations involving those circumstances, the officer will have probable cause – which (this Court has agreed) "is not a high bar"[4] – to arrest the individual for that offense. As this Court explained in *Robinson*, the marijuana decriminalization law was not intended to alter existing law relating to search and seizure. 451 Md. at 125-28; *see also* Maryland Code, Health-General Article, §13-3314(a)(2) (medical marijuana law does "not prevent the imposition of any civil, criminal, or other penalties for … [o]perating, navigating, or being in actual physical control of any motor vehicle, aircraft, or boat while under the influence of marijuana.").

As in cases involving alcohol-impaired driving, the fact that the vehicle does not happen to be moving is not determinative. "Driv[ing]" includes being "in actual physical control of a vehicle." Maryland Code, Transportation Article, §11-114. This Court has

---

[3] *See* McKenna Oxenden, *Most Americans don't think it's a problem to drive high. Here's why it is*. Baltimore Sun (June 26, 2019), https://perma.cc/FP3W-L742; Neal Augenstein, *Marijuana-impaired driving spikes in Maryland, police say,* WTOP (February 19, 2019), https://perma.cc/EXR8-N5QX.

[4] *State v. Johnson*, 458 Md. 519, 535 (2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

listed factors for a trial court to consider in determining whether an individual is in actual physical control of the vehicle and explained "that any definition of 'actual physical control,' no matter how carefully considered, cannot aspire to cover every one of the many factual variations that one may envision." *Atkinson v. State*, 331 Md. 199, 216 (1993)[5]; *see also Dukes v. State*, 178 Md. App. 38, 46 (2008) (holding that driver found asleep in driver's seat was in "actual physical control" as that determination turns on "whether it is reasonable to assume that the person will, while under the influence, jeopardize the public by exercising some measure of control over the vehicle").

In this case, Mr. Pacheco was alone and awake in the driver's seat of the vehicle, with apparent control over it. There were no passengers who conceivably could have been responsible for the joint or the fresh odor of marijuana.[6] However, as the Majority Opinion

---

[5] The factors are:

1) whether or not the vehicle's engine is running, or the ignition on;
2) where and in what position the person is found in the vehicle;
3) whether the person is awake or asleep;
4) where the vehicle's ignition key is located;
5) whether the vehicle's headlights are on;
6) whether the vehicle is located in the roadway or is legally parked.

*Atkinson*, 331 Md. at 216.

[6] This is in contrast to *Norman v. State*, 452 Md. 373 (2017), in which the Court held that a police frisk of one of several passengers of a vehicle violated the Fourth Amendment because an odor of marijuana in the car by itself did not provide the officer with reasonable suspicion that the particular passenger was armed and dangerous. The individual's status as a *passenger* was central to the Court's reasoning in *Norman*: "a vehicle's passenger 'is generally not perceived to have the kind of control over the contents of the vehicle as does a driver'; additionally, under Maryland law, there is a 'distinction between drivers and owners and passengers of vehicles.'" 452 Md. at 399-400 (quoting *State v. Wallace*, 372 Md. 137, 158-159 (2002)).

3

notes in a footnote, the record does not indicate whether the officers believed that Mr. Pacheco was impaired and the State did not argue that there was probable cause to arrest him for impaired driving. Majority slip op. at 17 n.6. And neither officer testified that Mr. Pacheco was arrested for an impaired driving offense, although that in itself is not dispositive. *See, e.g., Devenpeck v. Alford*, 543 U.S. 146 (2004). Under the particular circumstances of this case the Majority opinion has reached the right conclusion. But it should not be read to preclude a conclusion that an officer has probable cause for arrest when the officer comes upon an individual alone and awake in the driver's seat of a vehicle with a marijuana joint at hand and the pungent odor of marijuana in the air.

Judge Watts has advised that she joins this opinion.